The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LISA TEAL,

                           Plaintiff,

          v.

STEBNER REAL ESTATE and DEREK
STEBNER,

                           Defendants.

Case No. C09-0118 MJP

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT**

          This matter comes before the Court on Plaintiff's motion for summary judgment.  (Dkt. No. 11.)  The Court has reviewed the motion, the response (Dkt. No. 16), the reply (Dkt. No. 19), and all documents submitted in support thereof.  For the reasons set forth below, the Court DENIES Plaintiff's motion.

**Background**

          Plaintiff Lisa Teal ("Teal") worked for Stebner Real Estate from July 5, 2006 to August 15, 2006.  (Teal Decl. ¶¶ 1, 17.)  Derek Stebner owns Stebner Real Estate (together "Defendants").  (Stebner Decl. ¶ 1.)  On January 1, 2009, Plaintiff brought an action in this Court against Defendants, alleging sexual harassment and discrimination under Title VII of the Civil Rights Act of 1964 as amended and Washington Law Against Discrimination (WLAD), constructive discharge, intentional infliction of emotional distress (IIED), and negligent infliction

1    of emotional distress (NIED).  (Compl. ¶¶ 19-35.)  Plaintiff now moves for partial summary

2    judgment on liability of the first three claims.  (Dkt. No. 11.)

3         The facts of this case are highly disputed.  Plaintiff asserts the facts are as follows:

4    Stebner was out of the office during Teal's first two weeks of employment, but upon his return,

5    his behavior was highly inappropriate.  (Teal Decl. ¶ 4.)  Stebner yelled at Teal on a daily basis,

6    calling her names such as "bitch, cunt, fucking bitch, fucking cunt, fucking idiot, fucking

7    retarded, fucking moron, dumb bitch, and stupid bitch," and making comments such as, "Why

8    can't you be like a guy and just say fuck you back and get over it. [sic]  Women are too

9    emotional."  (Id. ¶¶ 6, 13.)  This behavior took place both in private and in front of coworkers.

10   (Id. ¶¶6, 13.)  Other former Stebner employees corroborate Teal's description of the workplace.

11   (See Schuck Decl. ¶¶ 6-8.)  Further, Stebner made sexual comments such as, "So did you get laid

12   last night?" and "Must be getting a lot of exercise from your boyfriend."  (Id. ¶¶ 7-9.)  On one

13   occasion, when Teal was in Stebner's office, he began unbuttoning his pants to change.  (Id. ¶

14   11.)  Teal left his office immediately.  (Id.)  Stebner also refused to pay Teal for any overtime

15   hours she worked.  (Id. ¶ 3.)  After each incident with Stebner, Teal would either ask him to stop

16   or ignore him.  (Id. ¶¶ 20.)  Teal states Stebner's behavior caused her to stutter, made it so she

17   could "barely go to work," and affected her self-esteem.  (Id. ¶¶ 14, 19.)

18        In addition to Teal's direct interactions with Stebner, he "also made discriminatory sexual

19   comments when discussing business decisions in the office."  (Id. ¶ 9.)  These comments

20   included an instruction not to interview any men or "fags," that he wanted to hire someone who

21   was "young and pretty," and that an applicant's intelligence was irrelevant "as long as she looked

22   good."  (Dkt. No. 11 ¶¶ 9-10; Resseger Decl. ¶¶ 9-10.)

23        Defendants assert the facts are as follows: Stebner was out of state for the majority of

24   Teal's employment with Stebner Real Estate, and therefore the parties' interactions were limited

25   to a time period of less than one week.  (Stebner Decl. ¶ 1.)  Teal was not a hard worker, and she

26   failed to follow procedures.  (Id. ¶ 4.)  Stebner sometimes yells and swears at his employees.  (Id.

¶ 4; Simmons Decl. ¶ 2.)  Although he "raised his voice" at Teal, he never called her any gender-based names, nor did he ask about her sex life.  (Id. ¶ 4.)  Stebner regularly changes clothes in his office with the door closed, and it is customary for employees to knock before entering.  (Id. ¶ 5; Simmons Decl. ¶ 3.)  He does not recall Teal ever being in his office when he was changing. (Stebner Decl. ¶ 5.)  Oftentimes, his girlfriend Stacy Simmons ('Simmons') and his parents work with him at the office.  (Id. ¶¶ 4, 6.)  Over the years, Stebner has hired just as many male employees as he has females, and his only requirement regarding applicants is that they are "hard workers, follow instructions and are competent."  (Id. ¶ 6.)

**Analysis**

A.      Summary judgment standard

"Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Nor is summary judgment warranted if a material issue of fact exists for trial.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial.  Id. at 324.

B.      Defendants' Declarations

Teal contends the Stebner and Simmons declarations are insufficient to oppose her

1   motion for summary judgment because they lack authentication, are not based on personal

2   knowledge, and consist of conclusory allegations rather than specific facts.  (Dkt. No. 19 at 3-8.)

3   Fed. R. Civ. P. 56(e) requires declarations or affidavits must be "made on personal knowledge,

4   set out facts that would be admissible in evidence, and show that the affiant is competent to

5   testify on the matters stated."  As required by 28 U.S.C. § 1746, Defendants' declarations

6   provide "under penalty and perjury" certifications and are dated and signed.  (See Stebner Decl.;

7   Simmons Decl.)  Though some statements certainly advance conclusions, the declarations do set

8   forth some facts based on personal knowledge.  (See, e.g., Stebner Decl. ¶ 4 ("I did not use the

9   gender specific words … toward her…"); ¶ 6 ("I have had at least as many men employees on

10  my payroll.").)   While sparse, the affidavits meet the formalities required by Fed. R. Civ. P.

11  56(e).

12  C.      Plaintiff's claims

13          1.      Sexual harassment

14          To establish a work environment sexual harassment claim under either the WLAD or

15  Title VII, Teal must prove four elements: (1) "the harassment was unwelcome"; (2) "the

16  harassment was because of sex"; (3) "the harassment affected the terms or conditions of

17  employment"; and (4) "the harassment is imputed to the employer."  Glasgow v. Georgia-Pacific

18  Corp., 103 Wn.2d 401, 406-07 (1985); see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57,

19  67-68 (1986) ("For sexual harassment to be actionable, it must be sufficiently severe or

20  pervasive 'to alter the conditions of [the victim's] employment and create an abusive working

21  environment.' . . .  The gravamen of any sexual harassment claim is that the alleged sexual

22  advances were 'unwelcome.'")

23          Central to any sexual harassment action is the existence of harassment.  To support Teal's

24  claim, she states Stebner engaged in daily yelling tirades and derogatory name calling for four

25  weeks straight, made general sexually-charged comments as well as questioned Teal about her

26  personal sex life, unbuttoned his pants in front of her, and made discriminatory business

ORDER DENYING PLAINTIFF'S MOTION FOR                    CASE NO. C09-0118 MJP
SUMMARY JUDGMENT - 4

decisions.  (Teal Decl. ¶¶ 4, 6, 7, 9, 10, 11, 13.)  Stebner disputes each of these facts.  He claims he worked with Teal for less than one week, never called her gender-specific names such as "bitch," never asked about her sex life, never changed his clothes in front of her, and aims to hire competent employees regardless of sex.  (Stebner Decl. ¶¶ 1, 4-6.)  These denials create a genuine issue of material fact as to what Stebner did or said and as to whether his behavior constitutes harassment.  In light of the factual disputes, summary judgment would be inappropriate on this claim.

 2.  Constructive discharge

To establish a constructive discharge claim, the employee must prove four elements: "(1) the employer deliberately made the working conditions intolerable for the employee, (2) a reasonable person would be forced to resign, (3) the employee resigned solely because of the intolerable conditions, and (4) the employee suffered damages."  Campbell v. State, 129 Wn. App. 10, 23 (2005).  Whether working conditions were intolerable is a question of fact and "may be shown by aggravated circumstances or a continuous pattern of discriminatory treatment."  Haubry v. Snow, 106 Wn. App. 666, 677 (2001).

Here, Teal claims that Stebner deliberately made her working conditions intolerable by his continuous name-calling, sexual comments, and refusing to pay overtime.  (Dkt. No. 11 at 14-15.)  As discussed above, the name-calling and sexual comments are disputed and preclude summary judgment of this claim.  Additionally, Teal offers no evidence of how many extra hours she worked or how much overtime Stebner withheld.  Without more, it remains a question of fact whether withholding overtime payments constitutes "intolerable" under the law.  See Haubry 106 Wn. App. at 677.  A review of just the first element of a constructive discharge claim thus indicates summary judgment is inappropriate.

 3.  Intentional infliction of emotional distress

To establish a claim for IIED, the plaintiff must prove three elements: "(1) extreme and

outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress."  <u>Snyder v. Medical Service Corp. of Eastern Washington</u>, 145 Wn.2d 233, 242 (2001) (citations omitted).

There is a genuine issue of material fact as to whether Stebner's conduct was "extreme and outrageous" because he denies calling Teal names or directing any sexual comments at her. Because conduct itself is in dispute, the Court declines to enter summary judgment on Plaintiff's IIED claim.

### Conclusion

The facts in the record indicate there are disputes about Stebner's behavior during the term of Teal's employment.  These factual disputes preclude summary judgment on Plaintiff's claims.  Plaintiff's motion for summary judgment on the issue of liability is DENIED.  The Clerk shall transmit a copy of this Order to all counsel of record.

Dated this 11th day of May, 2010.


Marsha J. Pechman
United States District Judge